**HR Holdings, LLC. v Horstmann**

2025 NY Slip Op 32477(U)

July 11, 2025

Supreme Court, Kings County

Docket Number: Index No. 522942/2024

Judge: Reginald A. Boddie

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Commercial Term Part 12, of the
Supreme Court of the State of New York, held
in and for the County of Kings, at the
Courthouse, located at 360 Adams Street,
Borough of Brooklyn, City and State of New
York, on the 11th day of July 2025.

PRESENT:
Honorable Reginald A. Boddie, JSC
-------------------------------------------------------------x,

HR Holdings, LLC.,

                Plaintiff,

    -against-


George Horstmann, individually, and
Jack Bear Farms, LLC,
                Defendants

    -and-

Vernon Farm & Market, LLC,

                Nominal Defendant.
-------------------------------------------------------------x

Index No. 522942/2024

Cal No.

**Inquest Decision**

Plaintiff, HR Holdings, LLC ("HR") commenced the within action alleging breach of contract, unjust enrichment, breach of fiduciary duty, as well as seeking judicial dissolution, punitive and other damages, related to Defendants' alleged failure to perform their obligations in conducting a cannabis business with the Plaintiff. Defendants failed to answer, and a default was entered. The within matter was set down for an inquest on damages. The inquest hearing was conducted on June 27, 2025.

David Powers ("Powers") is the CEO and founder of HR Holdings, LLC ("HR"). Powers, interested in developing a cannabis business in New York's new thriving industry, contacted Defendant Horstmann for assistance. Horstmann had a cannabis license. HR, Horstmann, and Vernon Reilly of Vernon Farm & Market, LLC ("Vernon"), formed Jack Bear Farms, LLC ("Jack Bear"), for the purposes of cultivating and selling cannabis. The parties signed an Operating Agreement, which recognized their initial investments

1

[* 1]

in the Jack Bear venture as HR $31,660.02, Horstmann, $30,000, and Vernon $18,000 (exhibit 1). The parties' relative percentage of membership interest was also recorded as 95% Hortsmann, and 2.5% each for HR and Vernon (exhibits 1 and 4). The parties agreed to share net profits after payment of rent to Vernon Farms for land (exhibits 2 and 3). The designated net profit percentages were reflected as 51% for Horstmann, and 24.5% each for HR and Vernon (exhibits 2 and 3).

Powers testified that he cleared the land and cleaned the facilities, bought the necessary seeds, and traveled to New York State from Tennessee regularly to cultivate the business at significant expense. He stated he received little in return because Horstmann never developed an account for the business, as required by law, or cashed any of the checks amounting to approximately twenty to thirty thousand dollars, which he is believed to still have possession of. Powers also testified that Horstmann was responsible for handling accounting-related matters for the business and filing tax returns, but he stated that no tax returns were ever filed and no tax documents were ever issued to him. Plaintiff alleges he incurred $308,227.92 in damages, inclusive of attorneys' fees and interest, from June 6, 2024.

Powers stated that he incurred significant expenses for travel and products, including seed for the business, totaling $109,499.55 (exhibit 7), and $122,138.03 for unused Hemp and flowers, due to spoliation, less $20,000 for product he was able to sell, for a total of $102,138.03 (exhibit 6). He admits when the product was grown, the parties received their respective share of the product as anticipated. However, he states he could not sell the product because Horstmann would not participate in allowing the use of his license, as was previously agreed. Nonetheless, he did find a buyer to work with although that buyer was only able to dispense with $20,000 of the product. Plaintiff also seeks attorneys' fees in the amount of $44, 979.72 through June 6, 2025.

After hearing and weighing the credible evidence, the Court declines to award Plaintiff its Capital Investment, which includes the initial investment of $31,000, and additional expenses sought herein, described as travel, tools or otherwise. Section 5.3 of the Operating Agreement provides, in part that "no Member shall have any right to demand a return of such Member's Capital Contribution or any Distribution from the Company, except upon dissolution pursuant to Article 11 hereof…"

2

Plaintiff alleges that he incurred an initial investment plus additional expenses and labor to harvest cannabis for the purpose of reaping a harvest to sell. However, as reflected by his testimony, he voluntarily took on these tasks and expenses since no one else stepped forward. Further, the harvest sought was obtained and HR received its proportionate share, although HR lost significant profits in the effort to sell it because Hortsmann refused to permit the use of his license, as was previously agreed. Nevertheless, awarding Plaintiff its total investments, as well as the alleged lost profits, would result in a double recovery in a transaction that Plaintiff understood from the outset to be merely an investment venture. Accordingly, Plaintiff is awarded $102,138.03 for the unused Hemp, which was specifically designated as his share and ruined due to spoliation after Hortsmann refused to assist him with selling it by utilization of his license. Plaintiff is also awarded attorneys' fees in the amount of $44,000, pursuant to paragraph 7.2 of the Operating Agreement and the terms of the Confidential Letter Agreement.

At this juncture, the Court declines to award Plaintiff other investment and business-related expenses sought in light of paragraph 6.6 of the Operating Agreement, which provides:

"The Company may, but shall not be obligated to provide, compensation (in the form of priority Distribution of profits, guaranteed payments, or otherwise) to Members for services provided to the Company, pursuant to a separate services agreement or otherwise; provided, however, that the terms of any such compensation shall be subject to the approval of a Majority Interest of the Members."

Accordingly, it is:

Ordered that Plaintiff shall have a judgment in the amount of $102,138.03, for lost profits, $10,334.35 for testing, plus interest from June 6, 2024, and attorneys' fees in the amount of $44,979.00, plus costs; and it is,

Ordered that Jack Bear Farms, LLC, shall be wound up pursuant to Section 703 of the NY Limited Liability Law and dissolved pursuant to Section 702 of the New York Liability Company Law; and it is,

Ordered that Plaintiff shall be entitled to any additional reasonable attorneys' fees and expenses associated with the winding up and dissolution of Jack Bear Farms LLC, as well as a credit for his Initial Capital Investment, in the event a profit is realized, subject to Court approval, and it is

3

[* 3]

Ordered that the Members may agree to any additional compensation of Plaintiff for business expenses associated with the venture, as provided for in paragraph 6.6 of the Operating Agreement.

ENTER:

_____
Honorable Reginald A. Boddie
Justice, Supreme Court

HON. REGINALD A. BODDIE
J.S.C.

4

[* 4]